Sedgie FOXWORTH, Paul Flowers, and
Christian Union Grocery, Inc.

v.

TRUSTMARK NATIONAL BANK.

No. 3:95–cv–160WS.

United States District Court,
S.D. Mississippi.

March 26, 1996.

Firnist J. Alexander, Jr., Jackson, MS, for
plaintiffs.

William E. Chapman, III, Eddie J. Abdeen, Daniel, Coker, Horton & Bell, Jackson, MS, for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant for dismissal of plaintiffs' complaint under Rule 12(b)(6),[1] Federal Rules of Civil Procedure, or for summary judgment pursuant to Rule 56(b),[2] Federal Rules of Civil Procedure. Also before the court is plaintiffs' motion ore tenus questioning this court's jurisdiction under Rule 12(b)(1),[3] Federal Rules of Civil Procedure, to even hear this dispute which the court construes as a motion to remand. After plaintiffs raised their concern, the court directed the parties to brief the issue. Having considered their respective arguments, this court agrees with plaintiffs and holds that this court does not have jurisdiction over this lawsuit. Accordingly, this case shall be remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi, where it originated.

The plaintiffs, Sedgie Foxworth, Paul Flowers, and Christian Union Grocery, Inc., filed this lawsuit in the Circuit Court for the First Judicial District of Hinds County, Mississippi, on February 27, 1995, against the defendant, Trustmark National Bank, a bank chartered under the Federal Banking Act, Title 12 U.S.C. § 21, et seq.[4], and headquartered in Jackson, Mississippi. In their complaint, plaintiffs, alleged depositors of Trustmark, accuse Trustmark of having made improper disclosures to third parties of plaintiffs' bank accounts. Plaintiffs seek to hold Trustmark liable for breach of the duty of fair dealing, breach of the contractual duty not to divulge confidential information, breach of privacy, slander and emotional distress.

Trustmark removed the complaint to this court on March 29, 1995,[5] pursuant to Title 28 U.S.C. § 1441(a),[6] alleging a federal ques-

1. Rule 12(b)(6) of the Federal Rules of Civil Procedure provides:

    **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

    (6) failure to state a claim upon which relief can be granted, . . .

2. Rule 56(b) of the Federal Rules of Civil Procedure provides:

    (b) For Defending Party. A party against whom a claim, counterclaim or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

3. Rule 12(b)(1) of the Federal Rules of Civil Procedure provides:

    **(b) How Presented.** Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:

    (1) lack of jurisdiction over the subject matter, . . .

4. Title 12 U.S.C. § 27 provides in part that the Comptroller (of Currency) shall give such association a certificate, . . . , that such association has

complied with all the provisions required . . . before commencing the business of banking. . . .

5. The plaintiffs filed their complaint in state court on February 27, 1995. The defendant's notice of removal was not filed until March 29, 1995. For a civil action, a notice of removal generally must be filed within 30 days after service of the complaint. See 28 U.S.C. § 1446(b). Because the defendant did not timely file its notice, there was a defect in removal. However, a remand motion based on a defect in removal procedure must be made within 30 days after removal. See 28 U.S.C. § 1447(c). The plaintiffs never moved for remand based on a defect in removal. Instead, the plaintiffs seek remand to state court based on lack of subject matter jurisdiction. Of course, a motion to remand for lack of subject matter jurisdiction, as is at issue here, is not subject to the same time constraints. See 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,.the case shall be remanded."). Cavallini v. State Farm Mutual Auto Insurance Co., 44 F.3d 256, 264 (5th Cir.1995).

6. Title 28 U.S.C. § 1441(a) provides that "except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

tion. Thereafter, on April 21, 1995, Trustmark filed its motion for dismissal or for summary judgment. Trustmark's motion avers that Trustmark was obligated under federal law to make the disclosures that it did; that the plaintiffs' claims are preempted by the Right to Financial Privacy Act, Title 12 U.S.C. § 3401, *et seq.;* and that the plaintiff grocery store cannot maintain a cause of action here because it is not a customer of Trustmark, as are the other plaintiffs. After Trustmark filed its motion, the issue of this court's jurisdictional grant was raised.

Plaintiff Foxworth was a branch manager of one of the defendant's banks in Columbia, Mississippi. Supposedly, the bank got a tip from an individual that Foxworth was obtaining food stamps at partial value and redeeming them for full value through the branch bank. Thereupon, the defendant's Vice President of Security conducted an investigation which revealed that Foxworth had "unusual" activity in his personal savings · account. "Visitors" allegedly were seen coming into the bank to consult with Foxworth. Foxworth then would make withdrawals from his savings account. Afterwards the visitors would leave immediately. These visitors were not recognized as bank customers. They dealt only with Foxworth. Based on these observations, the defendant's executive officer reported this activity to Special Agent Larry Brewer of the United States Department of Agriculture (USDA).

According to the defendant, its executive officer informed the USDA that the defendant suspected Foxworth and Flowers, co-owners of the Christian Union Grocery (also a plaintiff here), of illegally trafficking in food stamps. Defendant denies that it ever revealed any account information to the USDA with regard to Flowers or Foxworth and denies that it ever claimed that the grocery store was involved in the suspected trafficking. Moreover, says defendant, Christian Union Grocery had no account with the defendant, so, it was impossible for defendant to have revealed any information about the grocery store's non-existent accounts.

## THE JURISDICTIONAL ISSUE

Filed originally in state court, plaintiffs' lawsuit was removed to this federal forum by defendants on March 29, 1995, under the auspices of Title 28 U.S.C. § 1441, *et seq.* Defendants argue that plaintiffs' claims raise a federal question. Plaintiffs disagree, saying that they raised only state law claims in their complaint and that federal jurisdiction over these claims does not lie.

Federal courts are courts of limited jurisdiction. *Zuspann v. Brown,* 60 F.3d 1156, 1158 (5th Cir.1995); *Veldhoen v. United States Coast Guard,* 35 F.3d 222, 225 (5th Cir.1994). Federal courts properly exercise jurisdiction over claims based upon diversity of citizenship, Title 28 U.S.C. § 1332; *Allen v. R & H Oil & Gas Company,* 63 F.3d 1326, 1329 (5th Cir.1995); and federal question, Title 28 U.S.C. § 1331; *Hightower v. Texas Hospital Association,* 65 F.3d 443, 446 (5th Cir.1995), where the claims are founded on the United States Constitution, federal statutes or regulations. *Herron v. Continental Airlines, Inc.,* 73 F.3d 57, 59 (5th Cir.1996). These matters comprise subject matter jurisdiction.

■ A federal court's subject matter jurisdiction may be examined at any time. *Matter of Texas General Petroleum Corporation,* 52 F.3d 1330, 1337 (5th Cir.1995). Indeed, it behooves a court periodically to verify its jurisdiction over a dispute because where subject matter jurisdiction is lacking, even a lawsuit tried to completion has no finality. *Houston v. United States Postal Service,* 823 F.2d 896, 902 (5th Cir.1987) (subject matter jurisdiction can be raised at any time, even sua sponte by the court); *In re Carter,* 618 F.2d 1093, 1100 (5th Cir.1980) (subject matter jurisdiction can be raised even on appeal).

Defendant acknowledges that on its face plaintiffs' complaint alleges only state law claims. Defendant additionally acknowledges the thrust and breath of the "well-pleaded complaint" rule, which recognizes a plaintiff as the master of his complaint and generally restricts the scrutiny of the court to the allegations asserted within the borders of the complaint. *Healy v. Sea Gull Specialty Company,* 237 U.S. 479, 480, 35 S.Ct. 658,

659, 59 L.Ed. 1056 (1915); *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir.1995).

■ According to defendant, the "well-pleaded complaint" rule has no vitality here because of the presence of two exceptions to that rule, namely the "complete preemption" and the "artful pleading" exceptions. The "complete preemption" defense was first indicated in *Avco Corporation v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968). In *Avco*, the plaintiff was an employer seeking an injunction in state court against a labor strike. The employer argued that the strike was in violation of a collective bargaining agreement. The defendant union removed the case to federal court. Eventually, the United States Supreme Court held that the removal was proper—even though the plaintiff's complaint did not, on its face, involve a federal question—because section 301 of the Labor Management Relations Act (LMRA) so thoroughly preempts state law as to force the Court to recharacterize the plaintiff's complaint as arising under that section of the Act. Thus, the "complete preemption" defense is available where federal law so completely preempts a field of state law that the plaintiff's complaint must be recharacterized as stating a federal cause of action, even if the complaint asserts only state law causes of action. *See Metropolitan Life Insurance Company v. Taylor*, 481 U.S. 58, 64, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987) (ERISA[7] preempted benefits contract case). In *Metropolitan Life Insurance Company v. Taylor*, the plaintiff was injured in a car accident and sought disability benefits pursuant to a policy of insurance provided by the plaintiff's employer. Subsequently, the plaintiff brought tort and contract claims in state court alleging improper processing and payment of benefits. The case was removed to federal court. Eventually, the United States Supreme Court held that the policy was governed by ERISA and that the doctrine of complete preemption applied to the plaintiff's case. The Court held that Congress may so preempt a particular area that any civil complaint raising the select group of claims is necessarily federal in character and may be removed even if no federal claim is asserted and federal preemption is raised only as a defense. *Id.*, at 62, 66, 107 S.Ct. at 1546, 1548; *Anderson v. Electronic Data Systems Corporation*, 11 F.3d 1311, 1314 (5th Cir.1994).

■ The second theory argued by the defendant, the "artful pleading" exception, arises where the court finds it necessary to evaluate a plaintiff's motive for failure to plead a federal cause of action. The Fifth Circuit has applied the artful pleading doctrine principally in cases which involve the preemptive effect of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §§ 141–187. *Aaron v. National Union Fire Insurance Company*, 876 F.2d 1157, 1161 (5th Cir.1989), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990), citing *Beers v. North American Van Lines, Inc.*, 836 F.2d 910, 913 (5th Cir.1988); *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359 (5th Cir.), *cert. denied*, 469 U.S. 1018, 105 S.Ct. 433, 83 L.Ed.2d 359 (1984); *United Jersey Banks v. Parell*, 783 F.2d 360, 368 (3d Cir.), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). The reasoning underlying the artful pleading doctrine involves the same type of preemption analysis as set forth in the *Avco* case. Significantly, the Fifth Circuit notes that *Eitmann* has been followed by the Third Circuit, which added to the *Eitmann* rationale that the artful pleading doctrine should be "applied with circumscription" to avoid "difficult issues of federal-state relations." *Aaron v. National Union Fire Insurance Company*, at 1161, citing *United Jersey Banks v. Parell*, 783 F.2d 360, 368 (3rd Cir.), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2892, 90 L.Ed.2d 979 (1986). This suggests that the Fifth Circuit would not be inclined to apply liberally the exceptions to the well-pleaded complaint rule.

Defendant argues that both exceptions, "complete preemption" and "artful pleading," apply here. According to defendant, The Right to Financial Privacy Act ("RFPA"), Title 12 U.S.C. § 3401, *et seq.*, which pre-

---

**7.** ERISA is the Employee Retirement Income Security Act, Title 29 U.S.C. §§ 1001–1461.

cludes a federally chartered financial institution from providing a customer's financial records to any government authority except as provided by RFPA and its interpretive regulations, amounts to pervasive federal legislation which completely preempts the field. Then, relative to the "artful pleading" doctrine, defendant charges that the plaintiffs intentionally refused to plead the RFPA. The plaintiffs seek one hundred million dollars in compensatory damages and two hundred million dollars in punitive damages. Defendant suggests that the plaintiffs are merely trying to avoid any federal limitation on damages under Title 12 U.S.C. § 3417(a)[8] and any heightened pleading[9] requirements regarding punitive damages.

This court is persuaded that neither doctrine applies here. In support of its preemption argument, the defendant relies upon the preemption analysis found in *Aaron v. National Union Fire Insurance Company, supra.* Following *Aaron,* the defendant says that complete preemption depends on whether the federal statutory scheme in question has a civil enforcement provision; a clear grant of federal jurisdiction; and congressional intent for the federal scheme to have preemptive effect. *See Aaron,* at 1164–66. Then, the defendant attempts to show that all these factors are present in the RFPA. Although defendant can show a civil enforcement provision[10] and a clear grant of federal jurisdiction,[11] defendant has submitted no evidence that Congress intended this statute to have preemptive effect. Defendant cites no case authority nor any specific expression of Congressional intent for RFPA to be preemptive. Furthermore, as also noted by the Court in *Velasquez–Campuzano v. Marfa National Bank,* 896 F.Supp. 1415, 1422

(N.D.Tex.1995) (no "safe harbor" provision found in section 3413(d) of the RFPA, which relates to disclosure mandated by federal law), the RFPA made no provision for protecting financial institutions from non-RFPA claims when the financial institutions disclosed financial records. Thus, it would appear that state law claims are not and were never preempted by the RFPA for disclosures mandated by federal law.

Relative to defendant's "artful pleading" argument, this court is not convinced that plaintiffs pleaded state law claims solely to dodge certain limitations found in RFPA. Moreover, this court is not prepared to dethrone plaintiffs as the master of their own complaint, and to hold that plaintiffs are required to plead one applicable statute or state law claim over another, where by pleading an alternative theory plaintiffs may receive the same or greater relief.

Thus, this court is not inclined to adopt defendant's "complete preemption" and "artful pleading" arguments. Accordingly, this court fails to find federal subject matter jurisdiction here.

As mentioned earlier, defendant filed a motion to dismiss or for summary judgment. Since this court has no jurisdiction over the dispute, it will not rule on defendant's motion. However, the court will make an observation. In the briefs submitted on the motion, neither side cited Title 31 U.S.C. § 5318(g) found in the Money and Finance section of the United States Code. This subsection addresses the reporting of suspicious transactions and provides a safe harbor provision which says that "[a]ny financial institution that makes a disclosure of any pos-

---

**8.** Title 12 U.S.C. § 3417(a) provides that "[a]ny agency or department of the United States or financial institution obtaining or disclosing financial records or information contained therein in violation of this chapter is liable to the customer to whom such records relate in an amount equal to the sum of—
  (1) $100 without regard to the volume of records involved;
  (2) any actual damages sustained by the customer as a result of the disclosure; ..."

**9.** Title 12 U.S.C. § 3417(a)(3) provides that "such punitive damages as the court may allow

where the violation is found to have been willful or intentional; ..."

**10.** *See* footnote 8.

**11.** Title 12 U.S.C. § 1316 provides that "[a]n action to enforce any provision of this chapter may be brought in any appropriate United States District Court without regard to the amount in controversy within three years from the date on which the violation occurs or the date of discovery of such violation, whichever is later."

sible violation of law ... or a disclosure pursuant to this subsection or any other authority, any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any constitution, law or regulation of any State or any political subdivision thereof...." The statute was enacted in its current form as part of the Annunzio–Wylie Anti Money–Laundering Act, Pub.L. 102–550, 106 Stat. 4059, on October 28, 1992. According to the defendant in the instant case, its disclosure of Foxworth's and Flowers' suspicious activity to the USDA was made in either January or February of 1994. Therefore, Title 31 U.S.C. § 5318 may apply to this case because the substantive rights of the parties were established in October of 1992, at least 15 months prior to the defendant's disclosure to the USDA. *See Landgraf v. U.S.I. Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Also see Velasquez–Campuzano*, at 1423–24, which discussed § 5318 in detail but refused to apply it retroactively to conduct which occurred in 1991.

### *CONCLUSION*

This court holds that neither defendant's arguments on "complete preemption" nor that on "artful pleading" has merit. Since plaintiffs pleaded only state law claims and no one disputes lack of diversity of citizenship, this lawsuit belongs in state court. There defendant may assert any of its defenses, including that of § 5318(g).[12]

**IT IS THEREFORE ORDERED AND ADJUDGED** that this lawsuit be remanded to the Circuit Court for the First Judicial District of Hinds County, Mississippi, in accordance with Title 28 U.S.C. § 1447(c) which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

**SO ORDERED AND ADJUDGED.**

---

**12.** No one contends that the availability of a defense found in a federal statute bestows subject matter jurisdiction on this court. This point was settled long ago. *Eitmann v. New Orleans Public Service, Inc.*, 730 F.2d 359, 365 (5th Cir.1984).